E-FILED
Tuesday, 22 February, 2022  04:26:30 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., and SHREZE JOHNSON, Individually; | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-01047 |
| UNITED STATES OF AMERICA; OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; BRADLEY NITZSCHE, M.D.; MICHAEL LEONARDI, M.D.; DOUGLAS C. HARRINGTON, M.D., S.C., an Illinois Corporation; DOUGLAS C. HARRINGTON, M.D.; ILLINOIS HOSPITAL MEDICINE ASSOCIATES, P.C., an Illinois Corporation; ANTHONY J. CARUSO, M.D.; OSF MULTI-SPECIALTY GROUP, an Illinois Corporation; SHELLY SHALLAT, M.D.; SUSAN RAMIRO, M.D | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

**JURISDICTION AND VENUE**

1.      This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq*.

2.      The Plaintiffs, K.R., a Minor, by and through Commerce Trust Company, as Guardian of the Estate of K.R., and Shreze Johnson, Individually, have complied with Section 2675(a) of the Federal Tort Claims Act, and have exhausted their administrative remedies before filing this suit.

3.      On April 25, 2018, the Plaintiffs filed an administrative claim with the United States Department of Health & Human Services ("HHS") for medical care that resulted in significant injuries to K.R.

1

4. On August 30, 2018, HHS denied the administrative claim. (*See* Denial Letter, attached as Exhibit A).

5. The Plaintiffs have elected to file suit against the USA in the United States District Court for the Central District of Illinois pursuant to 28 U.S.C. § 2401(b).

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1346(b), in which the District Court shall have exclusive jurisdiction of civil actions on claims against the United States for money damages for personal injury by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of her office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the laws of the State of Illinois.

7. Venue is proper under 28 U.S.C. § 1391(b) because all of the acts and omissions forming the basis of the claim occurred in the Central District of Illinois.

8. On or about March 22, 2017, and at all times material, HEARTLAND COMMUNITY HEALTH CLINIC ("HEARTLAND") was a healthcare facility located in Peoria, Peoria County, Illinois, receiving grant money from the United States Public Healthcare Service, pursuant to 42 U.S.C. § 233, as well as being the employer of various physicians, nurses, and healthcare workers.

9. On or about March 22, 2017, and at all times material, CAROLYN CALHOUN, R.N. ("CALHOUN") was an agent, servant, and/or employee of HEARTLAND and USA.

10. Defendant, USA, has been deemed the employer of HEARTLAND and CALHOUN, pursuant to 42 U.S.C. § 233, for FTCA purposes only. (*See* Declaration and Deeming Letters, attached as Exhibit B).

## GENERAL ALLEGATIONS

11.     On or around March 22, 2017, and at all times material, Shreze Johnson lived in Peoria, Peoria County, Illinois.

12.     Shreze Johnson is the mother of K.R.

13.     On March 22, 2017 to March 23, 2017, and at all times material, OSF Healthcare System ("OSF") was an Illinois corporation, licensed to do business in Illinois, operating a hospital as Saint Francis Medical Center, located at 530 Northeast Glen Oak Avenue, Peoria, Peoria County, Illinois.

14.     On or around March 22, 2017, and at all times material, OSF provided certain facilities, including but not limited to, labor and delivery rooms, a newborn nursery, and a Neonatal Intensive Care Unit for patients, including Shreze Johnson and K.R.

15.     On or around March 22, 2017, and at all times material, OSF held itself out to the general public to be a provider of medical, nursing, and hospital services.

16.     On or around March 22, 2017, and at all times material, OSF employed certain personnel, including but not limited to, physicians, residents, nurses, and other hospital personnel, who provided medical, hospital, and nursing services to Shreze Johnson during her pregnancy, labor, and delivery of K.R.

17.     On or around March 22, 2017, and at all times material, Douglas C. Harrington, M.D., S.C. ("Harrington Corporation") was an Illinois corporation, licensed to do business in Illinois, operating a medical business with its registered address as 2609 Broadway in Pekin, Tazewell County, Illinois.

18.     On or around March 22, 2017, and at all times material, Harrington Corporation provided labor and delivery services for patients, including Shreze Johnson and K.R.

3

19.     On or around March 22, 2017, and at all times material, Harrington Corporation held itself out to the general public to be a provider of obstetrics & gynecology services.

20.     On or around March 22, 2017, and at all times material, Harrington Corporation employed certain personnel, including physicians, who provided obstetrical services to Shreze Johnson during her pregnancy, labor, and delivery of K.R.

21.     On or around March 22, 2017, and at all times material, Illinois Hospital Medicine Associates, Inc. ("IHMA") was an Illinois corporation, licensed to do business in Illinois, with its registered address as 801 Adlai Stevenson Drive, Springfield, Sangamon County, Illinois.

22.     On or around March 22, 2017, and at all times material, IHMA provided labor and delivery services for patients, including Shreze Johnson and K.R.

23.     On or around March 22, 2017, and at all times material, IHMA held itself out to the general public to be a provider of obstetrics & gynecology services.

24.     On or around March 22, 2017, and at all times material, IHMA employed certain personnel, including physicians, who provided obstetrical services to Shreze Johnson during her pregnancy, labor, and delivery of K.R.

25.     On or around March 22, 2017, and at all times material, Bradley Nitzsche, M.D. ("Dr. Nitzsche") was a physician licensed to practice medicine in the State of Illinois.

26.     On or around March 22, 2017, and at all times material, Dr. Nitzsche held himself out to Shreze Johnson and the general public to be a specialist in obstetrics.

27.     On or around March 22, 2017, and at all times material, Dr. Nitzsche was the resident physician responsible for managing the labor of Shreze Johnson and delivery of K.R.

28.     On or around March 22, 2017, and at all times material, Dr. Nitzsche was an employee and agent of OSF, and treating patients at Saint Francis Medical Center.

4

29.     On or around March 22, 2017, and at all times material, Dr. Nitzsche was an employee and agent of OSF acting within the scope of his employment during the labor of Shreze Johnson and delivery of K.R.

30.     On or around March 22, 2017, and at all times material, Dr. Nitzsche was an apparent agent of OSF.

31.     On or around March 22, 2017, and at all times material, Michael Leonardi, M.D. ("Dr. Leonardi") was a physician licensed to practice medicine in the State of Illinois.

32.     On or around March 22, 2017, and at all times material, Dr. Leonardi held himself out to Shreze Johnson and the general public to be a specialist in obstetrics.

33.     On or around March 22, 2017, and at all times material, Dr. Leonardi was the attending physician responsible for managing the labor of Shreze Johnson and delivery of K.R.

34.     On or around March 22, 2017, and at all times material, Dr. Leonardi was an employee and agent of OSF, and treating patients at Saint Francis Medical Center.

35.     On or around March 22, 2017, and at all times material, Dr. Leonardi was an employee and agent of OSF acting within the scope of his employment during the labor of Shreze Johnson and delivery of K.R.

36.     On or around March 22, 2017, and at all times material, Dr. Leonardi was an apparent agent of OSF.

37.     On or around March 22, 2017, and at all times material, Douglas C. Harrington, M.D. ("Dr. Harrington") was a physician licensed to practice medicine in the State of Illinois.

38.     On or around March 22, 2017, and at all times material, Dr. Harrington held himself out to Shreze Johnson and the general public to be a specialist in obstetrics.

39.     On or around March 22, 2017, and at all times material, Dr. Harrington was one of the physicians responsible for managing the labor of Shreze Johnson and delivery of K.R.

40.     On or around March 22, 2017, and at all times material, Dr. Harrington was an employee and agent of OSF, and treating patients at Saint Francis Medical Center.

41.     On or around March 22, 2017, and at all times material, Dr. Harrington was an employee and agent of OSF acting within the scope of his employment during the labor of Shreze Johnson and delivery of K.R.

42.     On or around March 22, 2017, and at all times material, Dr. Harrington was an apparent agent of OSF.

43.     On or around March 22, 2017, and at all times material, Dr. Harrington was employed by Harrington Corporation, and treating patients at Saint Francis Medical Center.

44.     On or around March 22, 2017, and at all times material, Dr. Harrington was an employee or agent of Harrington Corporation, acting within the scope of his employment during the labor of Shreze Johnson and delivery of K.R.

45.     On or around March 22, 2017, and at all times material, Anthony J. Caruso, M.D. ("Dr. Caruso") was a physician licensed to practice medicine in the State of Illinois.

46.     On or around March 22, 2017, and at all times material, Dr. Caruso held himself out to Shreze Johnson and the general public to be a specialist in obstetrics.

47.     On or around March 22, 2017, and at all times material, Dr. Caruso was one of the physicians responsible for managing the labor of Shreze Johnson and delivery of K.R.

48.     On or around March 22, 2017, and at all times material, Dr. Caruso was an employee and agent of OSF, and treating patients at Saint Francis Medical Center.

6

49.     On or around March 22, 2017, and at all times material, Dr. Caruso was an employee and agent of OSF acting within the scope of his employment during the labor of Shreze Johnson and delivery of K.R.

50.     On or around March 22, 2017, and at all times material, Dr. Caruso was an apparent agent of OSF.

51.     On or around March 22, 2017, and at all times material, Dr. Caruso was employed by IHMA, and treating patients at Saint Francis Medical Center.

52.     On or around March 22, 2017, and at all times material, Dr. Caruso was an employee or agent of IHMA, acting within the scope of his employment during the labor of Shreze Johnson and delivery of K.R.

53.     On or around March 22, 2017, the fetal monitor strip monitoring the heart rate of K.R. became non-reassuring.

54.     On or around March 22, 2017, the fetal monitor strip demonstrated K.R.'s fetal heart race tracing progressed to a Category III tracing.

55.     On March 22, 2017, the decision was made to proceed with a vacuum-assisted delivery.

56.     On March 22, 2017, at the time the decision was made to proceed with a vacuum-assisted delivery, K.R. was in the Occiput Posterior ("OP") position.

57.     On March 22, 2017, Drs. Nitzsche, Leonardi, Harrington, and Caruso, assessed K.R. to be in the Occiput Anterior position.

58.     On March 22, 2017, Shreze Johnson did not consent to the use of a vacuum on an OP position.

59.     On March 22, 2017, Defendants did not offer Shreze Johnson the option of a Caesarian section.

60.     On March 22, 2017, Defendants encountered a shoulder dystocia in their vacuum-assisted delivery of K.R.

61.     On March 22, 2017, K.R. was delivered and taken directly to the infant warmer.

62.     On March 22, 2017, K.R. was resuscitated.

63.     On March 22, 2017, K.R. experienced subgaleal hemorrhage.

64.     On March 22, 2017 to March 23, 2017, K.R. experienced hypoperfusion.

65.     On March 22, 2017 to March 23, 2017, and at all times material, OSF employed certain personnel, including but not limited to, physicians and residents, to provide pediatric and neonatal medical care to patients like K.R.

66.     On March 22, 2017 to March 23, 2017, and at all times material, Lauren Holmgren, M.D. (hereinafter "Dr. Holmgren") was a physician licensed to practice medicine in the State of Illinois.

67.     On March 22, 2017 to March 23, 2017, and at all times material, Dr. Holmgren held herself out to the Plaintiffs and to the general public to be a specialist in pediatric medicine.

68.     On March 22, 2017 to March 23, 2017, and at all times material, Dr. Holmgren was one of the resident physicians at the newborn nursery responsible for managing the care of K.R.

69.     On March 22, 2017 to March 23, 2017, and at all times material, Dr. Holmgren was an employee and agent of OSF, and treating patients at Saint Francis Medical Center.

70.     On March 22, 2017 to March 23, 2017, and at all times material, Dr. Holmgren was an employee and agent of OSF acting within the scope of her employment while managing the care of K.R. in the newborn nursery.

71.    On March 22, 2017 to March 23, 2017, and at all times material, Vivian Szymczuk, M.D. (hereinafter "Dr. Szymczuk") was a physician licensed to practice medicine in the State of Illinois.

72.    On March 22, 2017 to March 23, 2017, and at all times material, Dr. Szymczuk held herself out to the Plaintiffs and to the general public to be a specialist in pediatric medicine.

73.    On March 22, 2017 to March 23, 2017, and at all times material, Dr. Szymczuk was one of the resident physicians at the newborn nursery responsible for managing the care of K.R.

74.    On March 22, 2017 to March 23, 2017, and at all times material, Dr. Szymczuk was an employee and agent of OSF, and treating patients at Saint Francis Medical Center.

75.    On March 22, 2017 to March 23, 2017, and at all times material, Dr. Szymczuk was an employee and agent of OSF acting within the scope of her employment while managing the care of K.R. in the newborn nursery.

76.    On March 22, 2017 to March 23, 2017, and at all times material, Shelly Shallat, M.D. (hereinafter "Dr. Shallat") was a physician licensed to practice medicine in the State of Illinois.

77.    On March 22, 2017 to March 23, 2017, and at all times material, Dr. Shallat held herself out to the Plaintiffs and to the general public to be a specialist in pediatric medicine.

78.    On March 22, 2017 to March 23, 2017, and at all times material, Dr. Shallat was the attending physician at the newborn nursery responsible for managing the care of K.R.

79.    On March 22, 2017 to March 23, 2017, and at all times material, Dr. Shallat was an employee and agent of OSF, and treating patients at Saint Francis Medical Center.

80.    On March 22, 2017 to March 23, 2017, and at all times material, Dr. Shallat was an apparent agent of OSF, and treating patients at Saint Francis Medical Center.

81.     On March 22, 2017 to March 23, 2017, and at all times material, Dr. Shallat was an employee and agent of OSF acting within the scope of her employment while managing the care of K.R. in the newborn nursery.

82.     On March 22, 2017 to March 23, 2017, and at all times material, OSF MULTI-SPECIALTY GROUP ("OSFMSG") was an Illinois corporation, licensed to do business in Illinois.

83.     On March 22, 2017 to March 23, 2017, and at all times material, OSFMSG held itself out to the general public to be a provider of medical services.

84.     On March 22, 2017 to March 23, 2017, and at all times material, OSFMSG employed certain physicians, including Dr. Shallat, to provide medical services to K.R.

85.     On March 22, 2017 to March 23, 2017, and at all times material, Dr. Shallat was an employee and agent of OSFMSG.

86.     On March 22, 2017 to March 23, 2017, and at all times material, Dr. Shallat was an employee, agent, and/or apparent agent of OSFMSG acting within the scope of her employment while managing the care of K.R. in the newborn nursery.

87.     On March 23, 2017, and at all times material, Kyle Hickman, M.D. (hereinafter "Dr. Hickman") was a physician licensed to practice medicine in the State of Illinois.

88.     On March 23, 2017, and at all times material, Dr. Hickman held himself out to the Plaintiffs and to the general public to be a specialist in pediatric medicine.

89.     On March 23, 2017, and at all times material, Dr. Hickman was one of the resident physicians at the newborn nursery responsible for managing the care of K.R.

90.     On March 23, 2017, and at all times material, Dr. Hickman was an employee and agent of OSF, and treating patients at Saint Francis Medical Center.

10

91.     On March 23, 2017, and at all times material, Dr. Hickman was an employee and agent of OSF acting within the scope of his employment while managing the care of K.R. in the newborn nursery.

92.     On March 22, 2017 through March 23, 2017, and at all times material, K.R. was admitted as a patient to the newborn nursery at Saint Francis Medical Center.

93.     On March 22, 2017 through March 24, 2017, and at all times material, the physicians at the newborn nursery knew that K.R. had been delivered with vacuum assistance.

94.     On March 22, 2017, in the early evening, Dr. Szymczuk was informed that K.R. had a lower tone than expected and that she had a weak cry.

95.     On March 22, 2017, at or around 6:00 p.m., there was bruising on the posterior scalp with molding and edema.

96.     On March 22, 2017, at or around 6:00 p.m., K.R.'s head circumference was 33.5 cm.

97.     On March 22, 2017, at or around 8:52 p.m., K.R.'s hematocrit was at 44.1.

98.     K.R. was noted to cry all night from the night of March 22, 2017 through the morning of March 23, 2017.

99.     K.R.'s head circumference grew 1.5 cm overnight to 35 cm.

100.    On March 23, 2017, at around 5:00 a.m., Dr. Hickman noted that K.R. was irritable with a significant scalp edema.

101.    On March 23, 2017, at or around 5:00 a.m., Dr. Hickman did not put the scalp edema in the context of a vacuum-assisted delivery.

102.    On March 23, 2017, at or around 6:45 a.m., Dr. Shallat performed a morning assessment of K.R.

11

103.    On March 23, 2017, during her morning assessment, Dr. Shallat noted that K.R. had molding of the head.

104.    On March 23, 2017, during her morning assessment, Dr. Shallat noted that K.R.'s hemoglobin had dropped from 14.4 to 11.9.

105.    On March 23, 2017, Dr. Shallat did not include a subgaleal hemorrhage in the differential diagnosis.

106.    On March 23, 2017, and at all times material, Susan Ramiro, M.D. (hereinafter "Dr. Ramiro") was a physician licensed to practice medicine in the State of Illinois.

107.    On March 23, 2017, and at all times material, Dr. Ramiro held herself out to the Plaintiffs and to the general public to be a specialist in neonatal medicine.

108.    On March 23, 2017, and at all times material, Dr. Ramiro was the attending physician at the neonatal intensive care unit ("NICU") responsible for managing the care of K.R.

109.    On March 23, 2017, and at all times material, Dr. Ramiro was an employee and agent of OSF, and treating patients at Saint Francis Medical Center.

110.    On March 23, 2017, and at all times material, Dr. Ramiro was an apparent agent of OSF, and treating patients at Saint Francis Medical Center.

111.    On March 23, 2017, and at all times material, Dr. Ramiro was an employee, agent, and/or apparent agent of OSF acting within the scope of her employment while managing the care of K.R. in the NICU.

112.    On March 23, 2017, and at all times material, Benedicto Fernandes, D.O. (hereinafter "Dr. Fernandes") was a physician licensed to practice medicine in the State of Illinois.

113.    On March 23, 2017, and at all times material, Dr. Fernandes held himself out to the Plaintiffs and to the general public to be a specialist in neonatal medicine.

114.    On March 23, 2017, and at all times material, Dr. Fernandes was one of the resident physicians at the neonatal intensive care unit ("NICU") responsible for managing the care of K.R.

115.    On March 23, 2017, and at all times material, Dr. Fernandes was an employee and agent of OSF, and treating patients at Saint Francis Medical Center.

116.    On March 23, 2017, and at all times material, Dr. Fernandes was an employee and agent of OSF acting within the scope of his employment while managing the care of K.R. in the NICU.

117.    On March 23, 2017, at or around 9:02 a.m., K.R. was transferred to the NICU.

118.    On March 23, 2017, at or around 10:34 a.m., K.R.'s hematocrit had dropped to 31.5.

119.    On March 23, 2017, at or around 4:05 p.m., K.R.'s hematocrit had dropped to 28.

120.    A typical hematocrit for a newborn is in the 50s.

121.    On March 23, 2017, at or around 5:48 p.m., Dr. Fernandes ordered a blood transfusion for K.R.

122.    The blood transfusion was not given until approximately 6:22 p.m. on March 23, 2017.

123.    K.R. suffered kidney and liver damage due to the hypoperfusion secondary to the subgaleal hemorrhage.

124.    K.R. was subsequently diagnosed with cerebral palsy.

## COUNT I
### (Medical Negligence)
### (K.R. v. USA)

NOW COMES the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., by and through her attorneys, SALVI,

SCHOSTOK & PRITCHARD P.C., and complaining of the Defendant, UNITED STATES OF AMERICA, states as follows:

1-124.   The Plaintiff restates, realleges, and incorporates paragraphs 1 through 124 of the General Allegations as paragraphs 1 through 124 of Count I.

125.   On March 22, 2017, and at all times material, HEARTLAND operated as a general healthcare clinic licensed by the State of Illinois in the County of Peoria.

126.   On March 22, 2017, and at all times material, HEARTLAND was an Illinois Corporation licensed by the State of Illinois.

127.   On March 22, 2017, and at all times material, HEARTLAND held itself out to the Plaintiffs, and to the public generally, as a provider of nurse midwife services.

128.   On March 22, 2017, and at all times material, CALHOUN was a certified nurse midwife licensed in the State of Illinois.

129.   On March 22, 2017, and at all times material, CALHOUN held herself out to the Plaintiffs, and to the public generally, to be a specialist in midwifery.

130.   On March 22, 2017, and at all times material, HEARTLAND undertook to employ CALHOUN for the purpose of providing medical services to individuals like the Plaintiffs.

131.   On March 22, 2017, and at all times material, CALHOUN was a member of the medical staff at HEARTLAND.

132.   On March 22, 2017, and at all times material, CALHOUN was an employee, servant, agent and/or apparent agent of HEARTLAND and the USA.

133.   On March 22, 2017, and at all times material, HEARTLAND apparently loaned out its employees and/or agents, including CALHOUN, to provide midwifery services at OSF SAINT

FRANCIS MEDICAL CENTER ("ST. FRANCIS") located in Peoria County, Illinois, to obstetrics and gynecology patients at ST. FRANCIS.

134.   On March 22, 2017, and at all times material, CALHOUN was an employee, agent and/or apparent agent of ST. FRANCIS.

135.   On March 22, 2017, and at all times material, Defendant, CALHOUN, was the nurse midwife responsible for managing the labor of Shreze Johnson, and her delivery of K.R.

136.   On March 22, 2017, and at all times material, ST. FRANCIS provided certain facilities including Labor Room and Delivery Room for patients, including the Plaintiffs.

137.   On March 22, 2017, and at all times material, ST. FRANCIS provided certain instruments, drugs, and nurse midwifery services to patients, including the Plaintiffs.

138.   On March 22, 2017, and at all times material, CALHOUN provided nurse midwifery care to the Plaintiffs at ST. FRANCIS.

139.   On March 22, 2017, and at all times material, while providing nurse midwifery care to the Plaintiffs, CALHOUN was doing so as an employee, servant, agent and/or apparent agent of HEARTLAND and the USA.

140.   On March 22, 2017, and at all times material, while providing nurse midwifery care to the Plaintiffs, CALHOUN had a duty to possess and apply the knowledge and skill that other nurse midwives would exercise in the same or similar circumstances.

141.   On March 22, 2017, and at all times material, in derogation of her aforementioned duty, CALHOUN, individually, and as an employee, servant, agent and/or apparent agent of HEARTLAND and/or the USA, breached that duty and was negligent in one or more of the following respects:

  a.   Failed to timely recommend a C-section;

b.   Failed to appropriately respond to non-reassuring fetal monitor strips;

c.   Failed to advocate for Plaintiffs; and/or

d.   Failed to institute the chain of command.

142.   As a direct and proximate result of one or more of the aforementioned negligent acts and/or omissions of the Defendant, USA, K.R., a minor, suffered severe, permanent, and irreversible neurological damages; is permanently disabled and disfigured; has experienced and will permanently experience untold pain and suffering; has incurred and in the future, will incur, obligations for substantial sums of money for hospital, medical, nursing, caretaking, custodial bills, and has an impaired or no earning capacity.

143.   The Plaintiff, K.R., a minor, through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., attaches affidavits and reports in compliance with 735 ILCS 5/2-622 (attached as Group Exhibit C). Attached as Exhibit D is an Order appointing COMMERCE TRUST COMPANY Guardian of the Estate of K.R., as evidence of its right to bring this action.

WHEREFORE, the Plaintiff, K.R., a minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., demands judgment against the Defendant, UNITED STATES OF AMERICA.

## COUNT II
**(Family Expense Act)**
**(Johnson v. USA)**

NOW COMES the Plaintiff, SHREZE JOHNSON, Individually, by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of the Defendant, UNITED STATES OF AMERICA, states as follows:

16

1-141.  The Plaintiff, Shreze Johnson, Individually, re-states, re-alleges, and incorporates by reference paragraphs 1 through 141 of the General Allegations and Count I as paragraphs 1 through 141 of Count II.

142.    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of USA, the Plaintiff, Shreze Johnson, as the parent of the minor Plaintiff, K.R., incurred and in the future will incur obligations for substantial sums of money for hospital, medical, nursing, and other medical and family expenses of the minor Plaintiff, pursuant to the Illinois Family Expense Act, 750 ILCS 65/14.

143.    The Plaintiff attaches affidavits and reports in compliance with 735 ILCS 5/2-622 (attached as Group Exhibit C).

WHEREFORE, the Plaintiff, SHREZE JOHNSON, Individually, demands judgment against the Defendant, UNITED STATES OF AMERICA.

## COUNT III
### (Medical Negligence)
### (K.R. v. OSF, Dr. Nitzsche)

NOW COMES the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of the Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER and BRADLEY NITZSCHE, M.D., states as follows:

1-124.  The Plaintiff re-states, re-alleges, and incorporates by reference, paragraphs 1 through 124 of the General Allegations as paragraphs 1 through 124 of Count III.

125.    While providing obstetrical services to Shreze Johnson and K.R., Dr. Nitzsche had a duty to possess and apply the knowledge, skill, and care of a reasonably careful obstetrician under the same or similar circumstances.

126.    Dr. Nitzsche, individually and as an agent, apparent agent and/or employee of OSF, breached his duty and was negligent in treating Shreze Johnson and K.R. in one or more of the following respects:

     a.    Failed to appropriately respond to non-reassuring fetal monitor strips;

     b.    Failed to identify the OP position of the baby;

     c.    Improperly used a vacuum-assisted method of delivery on a baby in an OP position;

     d.    Failed to place the vacuum in the proper position on the baby's head;

     e.    Failed to properly assess the fetal position prior to placing the vacuum;

     f.    Failed to inform Shreze Johnson of the risks associated with the use of a vacuum in the delivery of a baby in the OP position; and/or

     g.    Failed to perform a cesarean section.

127.    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Dr. Nitzsche, individually, and as an agent, apparent agent and/or employee of OSF, K.R., a minor, suffered severe, permanent, and irreversible neurological damages; is permanently disabled and disfigured; has experienced and will permanently experience untold pain and suffering; has incurred and in the future, will incur, obligations for substantial sums of money for hospital, medical, nursing, caretaking, custodial bills, and has an impaired or no earning capacity.

128.    The Plaintiff attaches affidavits and reports in compliance with 735 ILCS 5/2-622 (attached as Group Exhibit C).  Attached as Exhibit D is an Order appointing COMMERCE TRUST COMPANY Guardian of the Estate of K.R., as evidence of its right to bring this action.

WHEREFORE, the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER, and BRADLEY NITZSCHE, M.D.

18

**COUNT IV**
**(Family Expense Act)**
**(Johnson v. OSF, Dr. Nitzsche)**

NOW COMES the Plaintiff, SHREZE JOHNSON, Individually, by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of the Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER and BRADLEY NITZSCHE, M.D., states as follows:

1-126.   The Plaintiff, Shreze Johnson, Individually, re-states, re-alleges, and incorporates by reference paragraphs 1 through 126 of the General Allegations and Count III as paragraphs 1 through 126 of Count IV.

127.   Shreze Johnson is K.R.'s lawful parent and legal guardian, and as such, has become liable for substantial pecuniary amounts arising out of K.R.'s injuries.

128.   The recovery of the aforementioned expenses is set forth under the provisions of the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, the Plaintiff, SHREZE JOHNSON, Individually, demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER, and BRADLEY NITZSCHE, M.D.

**COUNT V**
**(Medical Negligence)**
**(K.R. v. OSF, Dr. Leonardi)**

NOW COMES the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER and MICHAEL LEONARDI, M.D., states as follows:

1-124.  The Plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 124 of the General Allegations as paragraphs 1 through 124 of Count V.

125.    While providing obstetrical services to Shreze Johnson and K.R., Dr. Leonardi had a duty to possess and apply the knowledge, skill, and care of a reasonably careful obstetrician under the same or similar circumstances.

126.    Dr. Leonardi, individually and as an agent, apparent agent and/or employee of OSF, breached his duty and was negligent in treating Shreze Johnson and K.R. in one or more of the following respects:

   a.  Failed to appropriately respond to non-reassuring fetal monitor strips;

   b.  Failed to identify the occiput posterior ("OP") position of the baby;

   c.  Improperly used a vacuum-assisted method of delivery on a baby in an OP position;

   d.  Failed to recommend the proper position for placement of the vacuum on the baby's head;

   e.  Failed to intervene when the vacuum was placed in an improper position on the baby's head;

   f.  Failed to properly assess the fetal position prior to allowing the placement of the vacuum;

   g.  Failed to inform Shreze Johnson of the risks associated with the use of a vacuum in the delivery of a baby in the OP position; and/or

   h.  Failed to perform a cesarean section.

127.    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Dr. Leonardi, individually, and as an agent, apparent agent and/or employee of OSF, K.R., a minor, suffered severe, permanent, and irreversible neurological damages; is permanently disabled and disfigured; has experienced and will permanently experience untold pain and suffering; has incurred and in the future, will incur, obligations for substantial sums of money

20

for hospital, medical, nursing, caretaking, custodial bills, and has an impaired or no earning capacity.

128.   The Plaintiff attaches affidavits and reports in compliance with 735 ILCS 5/2-622 (attached as Group Exhibit C).  Attached as Exhibit D is an Order appointing COMMERCE TRUST COMPANY Guardian of the Estate of K.R., as evidence of its right to bring this action.

WHEREFORE, the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER, and MICHAEL LEONARDI, M.D.

### COUNT VI
**(Family Expense Act)**
**(Johnson v. OSF, Dr. Leonardi)**

NOW COMES the Plaintiff, SHREZE JOHNSON, Individually, by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of the Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER and MICHAEL LEONARDI, M.D., states as follows:

1-126.  The Plaintiff, Shreze Johnson, Individually, re-states, re-alleges, and incorporates by reference paragraphs 1 through 126 of the General Allegations and Count V as paragraphs 1 through 126 of Count VI.

127.   Shreze Johnson is K.R.'s lawful parent and legal guardian, and as such, has become liable for substantial pecuniary amounts arising out of K.R.'s injuries.

128.   The recovery of the aforementioned expenses is set forth under the provisions of the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, the Plaintiff, SHREZE JOHNSON, Individually, demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER, and MICHAEL LEONARDI, M.D.

## COUNT VII
### (Medical Negligence)
### (K.R. v. OSF, Harrington Corp., Dr. Harrington)

NOW COMES the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation; DOUGLAS C. HARRINGTON, M.D., S.C., an Illinois Corporation; and DOUGLAS C. HARRINGTON, M.D.; states as follows:

1-124. The Plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 124 of the General Allegations as paragraphs 1 through 124 of Count VII.

125.     While providing obstetrical services to Shreze Johnson and K.R., Dr. Harrington had a duty to possess and apply the knowledge, skill, and care of a reasonably careful obstetrician under the same or similar circumstances.

126.     Dr. Harrington, individually and as an agent, apparent agent and/or employee of OSF and/or Harrington Corporation, breached his duty and was negligent in treating Shreze Johnson and K.R. in one or more of the following respects:

   a.   Failed to appropriately respond to non-reassuring fetal monitor strips;

   b.   Failed to identify the occiput posterior ("OP") position of the baby;

   c.   Improperly used a vacuum-assisted method of delivery on a baby in an OP position;

   d.   Failed to recommend the proper position for placement of the vacuum on the baby's head;

    e.   Failed to intervene when the vacuum was placed in an improper position on the baby's head;

    f.   Failed to properly assess the fetal position prior to allowing the placement of the vacuum;

    g.   Failed to inform Shreze Johnson of the risks associated with the use of a vacuum in the delivery of a baby in the OP position; and/or

    h.   Failed to perform a cesarean section.

127.    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Dr. Harrington, individually, and as an agent, apparent agent and/or employee of OSF and Harrington Corporation, K.R., a minor, suffered severe, permanent, and irreversible neurological damages; is permanently disabled and disfigured; has experienced and will permanently experience untold pain and suffering; has incurred and in the future, will incur, obligations for substantial sums of money for hospital, medical, nursing, caretaking, custodial bills, and has an impaired or no earning capacity.

128.    The Plaintiff attaches affidavits and reports in compliance with 735 ILCS 5/2-622 (attached as Group Exhibit C).  Attached as Exhibit D is an Order appointing COMMERCE TRUST COMPANY Guardian of the Estate of K.R., as evidence of its right to bring this action.

WHEREFORE, the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; DOUGLAS C. HARRINGTON, M.D., S.C., an Illinois Corporation; and DOUGLAS C. HARRINGTON, M.D.

**<u>COUNT VIII</u>**
**(Family Expense Act)**
**(Johnson v. OSF, Harrington Corp., Dr. Harrington)**

NOW COMES the Plaintiff, SHREZE JOHNSON, Individually, by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of the Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; DOUGLAS C. HARRINGTON, M.D., S.C., an Illinois Corporation; and DOUGLAS C. HARRINGTON, M.D., states as follows:

1-126.   The Plaintiff, Shreze Johnson, Individually, re-states, re-alleges, and incorporates by reference paragraphs 1 through 126 of the General Allegations and Count VII as paragraphs 1 through 126 of Count VIII.

127.   Shreze Johnson is K.R.'s lawful parent and legal guardian, and as such, has become liable for substantial pecuniary amounts arising out of K.R.'s injuries.

128.   The recovery of the aforementioned expenses is set forth under the provisions of the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, the Plaintiff, SHREZE JOHNSON, Individually, demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; DOUGLAS C. HARRINGTON, M.D., S.C., an Illinois Corporation; and DOUGLAS C. HARRINGTON, M.D.

## COUNT IX
### (Medical Negligence)
### (K.R. v. OSF, IHMA, Dr. Caruso)

NOW COMES the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; ILLINOIS

HOSPITAL MEDICINE ASSOCIATES, P.C., an Illinois Corporation; and ANTHONY J. CARUSO, M.D.; states as follows:

1-124.   The Plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 124 of the General Allegations as paragraphs 1 through 124 of Count IX.

125.   While providing obstetrical services to Shreze Johnson and K.R., Dr. Caruso had a duty to possess and apply the knowledge, skill, and care of a reasonably careful obstetrician under the same or similar circumstances.

126.   Dr. Caruso, individually and as an agent, apparent agent and/or employee of OSF and/or IHMA, breached his duty and was negligent in treating Shreze Johnson and K.R in one or more of the following respects:

    a.   Failed to appropriately respond to non-reassuring fetal monitor strips;

    b.   Failed to identify the occiput posterior ("OP") position of the baby;

    c.   Improperly used a vacuum-assisted method of delivery on a baby in an OP position;

    d.   Failed to recommend the proper position for placement of the vacuum on the baby's head;

    e.   Failed to intervene when the vacuum was placed in an improper position on the baby's head;

    f.   Failed to properly assess the fetal position prior to allowing the placement of the vacuum;

    g.   Failed to inform Shreze Johnson of the risks associated with the use of a vacuum in the delivery of a baby in the OP position; and/or

    h.   Failed to perform a cesarean section.

127.   As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of Dr. Caruso, individually, and as an agent, apparent agent and/or employee of OSF and IHMA, K.R., a minor, suffered severe, permanent, and irreversible neurological damages;

is permanently disabled and disfigured; has experienced and will permanently experience untold pain and suffering; has incurred and in the future, will incur, obligations for substantial sums of money for hospital, medical, nursing, caretaking, custodial bills, and has an impaired or no earning capacity.

128.   The Plaintiff attaches affidavits and reports in compliance with 735 ILCS 5/2-622 (attached as Group Exhibit C). Attached as Exhibit D is an Order appointing COMMERCE TRUST COMPANY Guardian of the Estate of K.R., as evidence of its right to bring this action.

WHEREFORE, the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; ILLINOIS HOSPITAL MEDICINE ASSOCIATES, P.C., an Illinois Corporation; and ANTHONY J. CARUSO, M.D.

## COUNT X
**(Family Expense Act)**
**(Johnson v. OSF, IHMA, Dr. Caruso)**

NOW COMES the Plaintiff, SHREZE JOHNSON, Individually, by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of the Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; ILLINOIS HOSPITAL MEDICINE ASSOCIATES, P.C., an Illinois Corporation; and ANTHONY J. CARUSO, M.D.

1-126.  The Plaintiff, Shreze Johnson, Individually, re-states, re-alleges, and incorporates by reference paragraphs 1 through 126 of the General Allegations and Count IX as paragraphs 1 through 126 of Count X.

127.    Shreze Johnson is K.R.'s lawful parent and legal guardian, and as such, has become liable for substantial pecuniary amounts arising out of K.R.'s injuries.

128.    The recovery of the aforementioned expenses is set forth under the provisions of the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, the Plaintiff, SHREZE JOHNSON, Individually, demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; ILLINOIS HOSPITAL MEDICINE ASSOCIATES, P.C., an Illinois Corporation; and ANTHONY J. CARUSO, M.D.

## COUNT XI
### (Medical Negligence)
### (K.R. v. OSF)

NOW COMES the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of Defendant, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER, states as follows:

1-124. The Plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 124 of the General Allegations as paragraphs 1 through 124 of Count XI.

125.    While providing medical services to K.R., OSF, by and through the following agents and employees, must possess and use the knowledge, skill, and care ordinarily used by reasonably careful physicians and residents in treating K.R.:

    a. Lauren Holmgren, M.D.

    b. Vivian Szymczuk, M.D.

    c. Kyle Hickman, M.D.

27

d. Benedicto Fernandes, D.O.

126.    OSF, by and through its agents and employees, breached its duties and was negligent in one or more of the following respects:

**Lauren Holmgren, M.D.**

a.  Failed to recognize subgaleal hemorrhage is strongly associated with vacuum extraction;

b.  Failed to recognize that KR was at increased risk for subgaleal hemorrhage given her birth history, including a non-reassuring fetal monitor strip and vacuum-assisted extraction;

c.  Failed to recognize the signs and symptoms of subgaleal hemorrhage;

d.  Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

e.  Failed to order serial hemoglobin and hematocrit tests in light of birth history;

f.  Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

g.  Failed to adequately monitor KR's head circumference;

h.  Failed to recognize increase in head circumference as sign of subgaleal hemorrhage; and/or

i.  Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding.

**Vivian Szymczuk, M.D.**

a.  Failed to recognize subgaleal hemorrhage is strongly associated with vacuum extraction;

b.  Failed to recognize that KR was at increased risk for subgaleal hemorrhage given her birth history, including a non-reassuring fetal monitor strip and vacuum-assisted extraction;

c.  Failed to recognize the signs and symptoms of subgaleal hemorrhage;

d.  Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

e. Failed to order serial hemoglobin and hematocrit tests in light of birth history;

f. Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

g. Failed to adequately monitor KR's head circumference;

h. Failed to recognize increase in head circumference as sign of subgaleal hemorrhage; and/or

i. Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding.

**Kyle Hickman, M.D.**

a. Failed to recognize subgaleal hemorrhage is strongly associated with vacuum extraction;

b. Failed to recognize that KR was at increased risk for subgaleal hemorrhage given her birth history, including a non-reassuring fetal monitor strip and vacuum-assisted extraction;

c. Failed to recognize the signs and symptoms of subgaleal hemorrhage;

d. Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

e. Failed to order serial hemoglobin and hematocrit tests in light of birth history;

f. Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

g. Failed to adequately monitor KR's head circumference;

h. Failed to recognize increase in head circumference as sign of subgaleal hemorrhage; and/or

i. Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding.

**Benedicto Fernandes, D.O.**

a. Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

b. Failed to order serial hemoglobin and hematocrit tests in light of birth history;

c. Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

d. Failed to adequately monitor KR's head circumference;

e. Failed to recognize increase in head circumference as sign of subgaleal hemorrhage; and/or

f. Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding.

127.   As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of OSF, by and through its agents and employees, Lauren Holmgren, M.D.; Vivian Szymczuk, M.D.; Kyle Hickman, M.D.; and Benedicto Fernandes, D.O.; K.R., a minor, suffered severe, permanent, and irreversible neurological damages; is permanently disabled and disfigured; has experienced and will permanently experience untold pain and suffering; has incurred and in the future, will incur, obligations for substantial sums of money for hospital, medical, nursing, caretaking, custodial bills, and has an impaired or no earning capacity.

128.   The Plaintiff attaches affidavits and reports in compliance with 735 ILCS 5/2-622 (attached as Group Exhibit C).  Attached as Exhibit D is an Order appointing COMMERCE TRUST COMPANY Guardian of the Estate of K.R., as evidence of its right to bring this action.

WHEREFORE, the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., demands judgment against Defendant, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER.

## COUNT XII
**(Family Expense Act)**
**(Johnson v. OSF)**

NOW COMES the Plaintiff, SHREZE JOHNSON, Individually, by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of the Defendants, OSF

HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER.

1-126.  The Plaintiff, Shreze Johnson, Individually, re-states, re-alleges, and incorporates by reference paragraphs 1 through 126 of the General Allegations and Count XI as paragraphs 1 through 126 of Count XII.

127.    Shreze Johnson is K.R.'s lawful parent and legal guardian, and as such, has become liable for substantial pecuniary amounts arising out of K.R.'s injuries.

128.    The recovery of the aforementioned expenses is set forth under the provisions of the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, the Plaintiff, SHREZE JOHNSON, Individually, demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER.

### COUNT XIII
### (Medical Negligence)
### (K.R. v. OSF, OSFMSG, Shallat)

NOW COMES the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; OSF MULTI-SPECIALTY GROUP, an Illinois Corporation; and SHELLY SHALLAT, M.D.; states as follows:

1-124.  The Plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 124 of the General Allegations as paragraphs 1 through 124 of Count XIII.

125.    While providing pediatric services to K.R., Dr. Shallat had a duty to possess and apply the knowledge, skill, and care of a reasonably careful pediatrician under the same or similar circumstances.

126.    Dr. Shallat, individually and as an agent, apparent agent and/or employee of OSF and/or OSFMSG, breached her duty and was negligent in treating K.R. in one or more of the following respects:

a.  Failed to recognize subgaleal hemorrhage is strongly associated with vacuum extraction;

b.  Failed to recognize that KR was at increased risk for subgaleal hemorrhage given her birth history, including a non-reassuring fetal monitor strip and vacuum-assisted extraction;

c.  Failed to recognize the signs and symptoms of subgaleal hemorrhage;

d.  Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

e.  Failed to order serial hemoglobin and hematocrit tests in light of birth history;

f.  Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

g.  Failed to adequately monitor KR's head circumference;

h.  Failed to recognize increase in head circumference as sign of subgaleal hemorrhage;

i.  Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding; and/or

j.  Failed to adequately communicate medical history and clinical status to neonatologist accepting care of KR.

127.    As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions, by Dr. Shallat, as agent and/or apparent agent and/or employee of OSF and OSFMSG, K.R., a minor, suffered severe, permanent, and irreversible neurological damages; is permanently disabled and disfigured; has experienced and will permanently experience untold pain and suffering; has incurred and in the future, will incur, obligations for substantial sums of money

for hospital, medical, nursing, caretaking, custodial bills, and has an impaired or no earning capacity.

128.    Attached as Group Exhibit C are affidavits and reports in compliance with 735 ILCS 5/2-622.  Attached as Exhibit D is an Order appointing COMMERCE TRUST COMPANY Guardian of the Estate of K.R., as evidence of its right to bring this action.

WHEREFORE, the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; OSF MULTI-SPECIALTY GROUP; and SHELLY SHALLAT, M.D.

## COUNT XIV
### (Family Expense Act)
### (Johnson v. OSF, OSFMG, Shallat)

NOW COMES the Plaintiff, SHREZE JOHNSON, Individually, by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of the Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; OSF MULTI-SPECIALTY GROUP, an Illinois Corporation; and SHELLY SHALLAT, M.D., states as follows:

1-126.  The Plaintiff, Shreze Johnson, Individually, re-states, re-alleges, and incorporates by reference paragraphs 1 through 126 of the General Allegations and Count XIII as paragraphs 1 through 126 of Count XIV.

127.    Shreze Johnson is K.R.'s lawful parent and legal guardian, and as such, has become liable for substantial pecuniary amounts arising out of K.R.'s injuries.

128.    The recovery of the aforementioned expenses is set forth under the provisions of the Family Expense Act, 750 ILCS 65/15.

33

WHEREFORE, the Plaintiff, SHREZE JOHNSON, Individually, demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER; OSF MULTI-SPECIALTY GROUP, an Illinois Corporation; and SHELLY SHALLAT, M.D.

**COUNT XV**
**(Medical Negligence)**
**(K.R. v. OSF, Ramiro)**

NOW COMES the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER and SUSAN RAMIRO, M.D., states as follows:

1-124. The Plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 124 of the General Allegations as paragraphs 1 through 124 of Count XV.

125. While providing pediatric services to K.R., Dr. Ramiro had a duty to possess and apply the knowledge, skill, and care of a reasonably careful neonatologist under the same or similar circumstances.

126. Dr. Ramiro, individually and as an agent, apparent agent and/or employee of OSF, breached her duty and was negligent in treating K.R. in one or more of the following respects:

a. Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

b. Failed to order serial hemoglobin and hematocrit tests in light of birth history;

c. Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

d. Failed to adequately monitor KR's head circumference;

34

e.  Failed to recognize increase in head circumference as sign of subgaleal hemorrhage; and/or

f.  Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding.

127.  As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions, by Dr. Ramiro, as agent and/or apparent agent and/or employee of OSF, K.R., a minor, suffered severe, permanent, and irreversible neurological damages; is permanently disabled and disfigured; has experienced and will permanently experience untold pain and suffering; has incurred and in the future, will incur, obligations for substantial sums of money for hospital, medical, nursing, caretaking, custodial bills, and has an impaired or no earning capacity.

128.  Attached as Group Exhibit C are affidavits and reports in compliance with 735 ILCS 5/2-622. Attached as Exhibit D is an Order appointing COMMERCE TRUST COMPANY Guardian of the Estate of K.R., as evidence of its right to bring this action.

WHEREFORE, the Plaintiff, K.R., a Minor, by and through COMMERCE TRUST COMPANY, as Guardian of the Estate of K.R., demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER and SUSAN RAMIRO, M.D.

### COUNT XVI
**(Family Expense Act)**
**(Johnson v. OSF, Ramiro)**

NOW COMES the Plaintiff, SHREZE JOHNSON, Individually, by and through her attorneys, SALVI, SCHOSTOK & PRITCHARD P.C., and complaining of the Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER and SUSAN RAMIRO, M.D., states as follows:

1-126.   The Plaintiff, Shreze Johnson, Individually, re-states, re-alleges, and incorporates by reference paragraphs 1 through 126 of the General Allegations and Count XV as paragraphs 1 through 126 of Count XVI.

127.   Shreze Johnson is K.R.'s lawful parent and legal guardian, and as such, has become liable for substantial pecuniary amounts arising out of K.R.'s injuries.

128.   The recovery of the aforementioned expenses is set forth under the provisions of the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, the Plaintiff, SHREZE JOHNSON, Individually, demands judgment against Defendants, OSF HEALTHCARE SYSTEM, an Illinois Corporation d/b/a SAINT FRANCIS MEDICAL CENTER and SUSAN RAMIRO, M.D.

### PLAINTIFFS DEMAND TRIAL BY JURY

SALVI, SCHOSTOK & PRITCHARD P.C.

By: /s/ *Matthew L. Williams*
　　　　One of the Attorneys for Plaintiffs

Matthew L. Williams (ARDC #6256858)
Eirene N. Salvi (ARDC #6321198)
John Mennie (ARDC # 6311221)
Salvi, Schostok & Pritchard P.C.
161 N. Clark Street, Suite 4700
Chicago, IL 60601
312.372.1227
mwilliams@salvilaw.com
esalvi@salvilaw.com
jmennie@salvilaw.com



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the General Counsel
General Law Division
Claims Office
330 C Street, SW.
Switzer Building, Suite 2600
Washington, D.C. 20201
Ph: (202) 691-2369

AUG 3 0 2018

**U. S. CERTIFIED MAIL–RETURN RECEIPT REQUESTED**
(Article No. 7012 3460 0000 9967 5854)

Eirene N. Salvi, Esq.
Law Offices of Salvi, Schostok & Pritchard, P.C.
22 West Washington Street, Suite 1600
Chicago, Illinois 60602-1615

Re: <u>**Administrative Tort Claim of** <span>K.R.</span> ▇▇▇ **a Minor, by and through Her Mother and Next Friend, Shreze Johnson**</u>, **Claim No. 2018-0407**

<u>**Administrative Tort Claim of Shreze Johnson, Individually,**</u> **Claim No. 2018-0408**

<u>**Administrative Tort Claim of Shreze Johnson, as Parent and Next Friend of** <span>K.R.</span> ▇▇▇ **a Minor,**</u> **Claim No. 2018-0411**

Dear Ms. Salvi:

On April 26, 2018, you filed three administrative tort claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b), 2401(b), 2671-80, on behalf of your client, Shreze Johnson, individually and on·behalf of ▇▇▇ <span>K.R.</span> a minor, alleging, *inter alia*, that, on March 22, 2017, Carolyn Calhoun, C.N.M., and Heartland Community Health Clinic, located in Peoria, Illinois, failed to provide proper labor and delivery care to Ms. Johnson, resulting in her baby suffering permanent injuries.

The FTCA authorizes the settlement of any claim of money damages against the United States for, *inter alia*, injury or death caused by the negligent or wrongful act or omission of any employee of the federal government, while acting within the scope of employment. Under the FTCA, said act or omission must be such that the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 2672.

This letter constitutes the notice of final determination of this administrative tort claim, as required by 28 U.S.C. §§ 2401(b), 2675(a). The three administrative tort claims of Shreze Johnson, individually and on behalf of ▇▇▇ <span>K.R.</span> a minor are denied. The evidence fails to establish that the alleged injuries were due to the negligent or wrongful act or omission of a federal employee acting within the scope of employment.

**Plaintiff Exhibit**

**A**

Page 2- Eirene N. Salvi, Esq.

If your client is dissatisfied with this determination, she may:

1.    file a written request with the Agency for reconsideration of the final
      determination denying the claims within six (6) months from the date of
      mailing of this determination (28 C.F.R. § 14.9); or

2.    file suit against the United States in the appropriate federal district court
      within six (6) months from the date of mailing of this determination (28
      U.S.C. § 2401(b)).

In the event your client requests reconsideration, the Agency will review the administrative tort
claims within six (6) months from the date the request is received.   If the reconsidered
administrative tort claim are denied, your client may file suit within six (6) months from the date
of mailing of the final determination.

Sincerely yours,

William A. Biglow
Deputy Associate General Counsel
Claims and Employment Law Branch

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | 18-0403+0408 |
| Certified Fee | | 0411 |
| Return Receipt Fee (Endorsement Required) | | ~ Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | SOC MET |

Eirene N. Salvi, Esq.
Law Offices of Salvi, Schostok &
Pritchard, P.C.
22 W Washington St Ste 1600
Chicago, IL 60602-1615

7016 0000 9967 5854

IN THE UNITED STATES DISTRICT COURT
FOR THE
CENTRAL DISTRICT OF ILLINOIS

K.R. _____ a Minor, by and through Her Mother and )
Next Friend, Shreze Johnson, and Shreze Johnson, )
Individually, )
             )
       Plaintiffs, )
             )
       v. )
             )
OSF Healthcare System d/b/a Saint Francis Medical Center,)
Bradley Nitzsche, M.D., Michael Leonardi, M.D., Douglas )
C. Harrington, M.D., S.C., Douglas C. Harrington, M.D., )
Best Care for Women, Inc., Anthony J. Caruso, M.D., )
Heartland Community Health Clinic, and Carolyn Calhoun,)
C.N.M., )
             )
       Defendants. )

## DECLARATION OF
## MEREDITH TORRES

1.  I am an Attorney in the General Law Division, Office of the General Counsel,

Department of Health and Human Services (the "Department"). I am familiar with the official

records of administrative tort claims maintained by the Department as well as with the system by

which those records are maintained.

2.  The Department has a Claims Office that maintains in a computerized database a

record of administrative tort claims filed with the Department, including those filed with respect to

federally supported health centers that have been deemed to be eligible for Federal Tort Claims

Act malpractice coverage.

3.  As a consequence, if an administrative tort claim had been filed with the Department

with respect to Heartland Community Health Center, its approved delivery sites or its employees

1


Plaintiff Exhibit
B

and/or qualified contractors, a record of that filing would be maintained in the Claims Branch's database.

4. I have caused a search of the Claims Branch's database to be conducted and found no record of an administrative tort claim filed by Shreze Johnson, Individually and on behalf of K.R.
and/or an authorized representative relating to Heartland Community Health Clinic and Carolyn Calhoun, C.N.M.

5. I have also reviewed official Agency records and determined that Heartland Community Health Clinic was deemed eligible for Federal Tort Claims Act malpractice coverage effective January 1, 2016, and its coverage has continued without interruption since that time. The Secretary of Health and Human Services' authority to deem entities as Public Health Service employees under 42 U.S.C. § 233(g) has been delegated to the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration. A copy of the notification by the Associate Administrator, Bureau of Primary Health Care, Health Resources and Services Administration, Department of Health and Human Services, to Heartland Community Health Clinic is attached to this declaration as Exhibit 1.

6. Official Agency records also indicate that Carolyn Calhoun, C.N.M., was an employee of Heartland Community Health Clinic at all times relevant to the Plaintiff's complaint in this case.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated at Washington, D.C., this __24th__ day of __January__, 2018.

MEREDITH TORRES
Senior Attorney, Claims and Employment Law
General Law Division
Office of the General Counsel
Department of Health and Human Services

2

# DEEMING LETTERS

## Preview NDA

Notice Email    NDA    NDA Letter

1. ISSUE DATE: (MM/DD/YYYY)
6/24/2015

2a. FTCA DEEMING NOTICE NO.:
1-F00000934-15-01

2b. Supersedes: [ ]

3. COVERAGE PERIOD:
   From: 1/1/2016  Through: 12/31/2016

4. NOTICE TYPE:
Renewal

5. ENTITY NAME AND ADDRESS:
Heartland Community Health Clinic
1701 W GARDEN ST
PEORIA, IL 61605-3531

6. ENTITY TYPE:
Grantee

7. EXECUTIVE DIRECTOR:
Charles Bandoian

8a. GRANTEE ORGANIZATION:
Heartland Community Health Clinic

8b. GRANT NUMBER:
_____ 2457

DEPARTMENT OF HEALTH AND HUMAN SERVICES
HEALTH RESOURCES AND SERVICES ADMINISTRATION



NOTICE OF DEEMING ACTION
FEDERAL TORT CLAIMS ACT AUTHORIZATION:
Federally Supported Health Centers Assistance Act(FSHCAA), as amended;
Sections 224(g)-(n) of the Public Health Service (PHS) Act, 42 U.S.C. § 233(g)-(n)

9. THIS ACTION IS BASED ON THE INFORMATION SUBMITTED TO, AND AS APPROVED BY HRSA, AS REQUIRED UNDER 42 U.S.C. § 233(h) FOR THE ABOVE TITLED ENTITY AND IS SUBJECT TO THE TERMS AND CONDITIONS INCORPORATED EITHER DIRECTLY OR BY REFERENCE IN THE FOLLOWING:

a. The authorizing program legislation cited above
b. The program regulation cited above, and
c. HRSA's FTCA-related policies and procedures

In the event there are conflicting or otherwise inconsistent policies applicable to the program, the above order of precedence shall prevail

10. Remarks:

The check box [x] in the supersedes field indicates that this notice supersedes any and all active NDAs and rescinds any and all future NDAs issued prior to this notice.

*Electronically signed by Tonya Bowers, Deputy Associate Administrator for Primary Health Care on: 6/24/2015 6:23:33 PM*

Close Window

| FTCA DEEMING NOTICE NO.: 1-F00000934-15-01 | GRANT NUMBER: ▮▮2457 |  |
| --- | --- | --- |

Heartland Community Health Clinic
1701 W GARDEN ST
PEORIA, IL61605-3531

Dear Charles Bandoian:

The Health Resources and Services Administration (HRSA), in accordance with the Federally Supported Health Centers Assistance Act (FSHCAA), as amended, sections 224(g)-(n) of the Public Health Service (PHS) Act, 42 U.S.C. §§ 233(g)-(n), deems Heartland Community Health Clinic to be an employee of the PHS, for the purposes of section 224, effective 1/1/2016 through 12/31/2016.

Section 224(a) of the PHS Act provides liability protection under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2672, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under the FTCA, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment. This protection is exclusive of any other civil action or proceeding. Coverage extends to deemed entities and their (1) officers; (2) governing board members; (3) full- and part-time employees; and (4) contractors who are licensed or certified individual health care practitioners providing full-time services (i.e., on average at least 32½ hours per week for the entity for the period of the contract), or, if providing an average of less than 32½ hours per week of such service, are licensed or certified providers in the fields of family practice, general internal medicine, general pediatrics, or obstetrics/gynecology. Volunteers are neither employees nor contractors and therefore are not eligible for FTCA coverage under FSHCAA.

This Notice of Deeming Action (NDA) is also confirmation of medical malpractice coverage for both Heartland Community Health Clinic and its covered individuals as described above. This NDA, along with documentation confirming employment or contractor status with the deemed entity, may be used to show liability coverage for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment.

In addition, FTCA coverage is comparable to an "occurrence" policy without a monetary cap. Therefore, any coverage limits that may be mandated by other organizations are met.

This action is based on the information provided in your FTCA deeming application, as required under 42 U.S.C. § 233(h), with regard to your entity's: (1) implementation of appropriate policies and procedures to reduce the risk of malpractice and litigation; (2) review and verification of professional credentials and privileges, references, claims history, fitness, professional review organization findings, and licensure status of health professionals; (3) cooperation with the Department of Justice (DOJ) in the defense of claims and actions to prevent claims in the future; and (4) cooperation with DOJ in providing information related to previous malpractice claims history.

Deemed health centers must continue to receive funding under Section 330 of the PHS Act, 42 U.S.C. § 254b, in order to maintain coverage as a deemed PHS employee. If the deemed entity loses its Section 330 funding, such coverage will end immediately upon termination of the grant. In addition to the relevant statutory and regulatory requirements, every deemed health center is expected to follow HRSA's FTCA-related policies and procedures, which may be found online at http://www.bphc.hrsa.gov.

For further information, please contact your HRSA Project Officer as listed on your Notice of Grant

🔲 **Preview NDA**

Notice Email     NDA     NDA Letter

**1. ISSUE DATE: (MM/DD/YYYY)**
6/23/2016

**2a. FTCA DEEMING NOTICE NO.:**
1-F00000934-16-01

**2b. Supersedes: [ ]**

**3. COVERAGE PERIOD:**
From: 1/1/2017 Through: 12/31/2017

**4. NOTICE TYPE:**
Renewal

**5. ENTITY NAME AND ADDRESS:**
Heartland Community Health Clinic
1701 W GARDEN ST PEORIA, IL 61605-3591
PEORIA, IL

**6. ENTITY TYPE:**
Grantee

**7. EXECUTIVE DIRECTOR:**
Charles Bandolan

**8a. GRANTEE ORGANIZATION:**
Heartland Community Health Clinic

**8b. GRANT NUMBER:**
▓▓▓▓2457

DEPARTMENT OF HEALTH AND HUMAN SERVICES
HEALTH RESOURCES AND SERVICES ADMINISTRATION



NOTICE OF DEEMING ACTION
FEDERAL TORT CLAIMS ACT AUTHORIZATION:
Federally Supported Health Centers Assistance Act(FSHCAA), as amended,
Sections 224(g)-(n) of the Public Health Service (PHS) Act. 42 U S C § 233(g)-(n)

**9. THIS ACTION IS BASED ON THE INFORMATION SUBMITTED TO, AND AS APPROVED BY HRSA, AS REQUIRED UNDER 42 U.S.C. § 233(h) FOR THE ABOVE TITLED ENTITY AND IS SUBJECT TO THE TERMS AND CONDITIONS INCORPORATED EITHER DIRECTLY OR BY REFERENCE IN THE FOLLOWING:**

a The authorizing program legislation cited above
b The program regulation cited above, and
c HRSA's FTCA-related policies and procedures.

In the event there are conflicting or otherwise inconsistent policies applicable to the program, the above order of precedence shall prevail

**10. Remarks:**

The check box [x] in the supersedes field indicates that this notice supersedes any and all active NDAs and rescinds any and all future NDAs issued prior to this notice.

*Electronically signed by Tonya Bowers, Deputy Associate Administrator for Primary Health Care on: 6/23/2016 6:49:37 PM*

[ Close Window ]

| FTCA DEEMING NOTICE NO.:<br>1-F00000934-16-01 | GRANT NUMBER:<br>2457 |  |
| --- | --- | --- |

**Heartland Community Health Clinic**
**1701 W GARDEN ST PEORIA, IL 61605-3531**
**PEORIA, IL**

Dear Charles Bandoian:

The Health Resources and Services Administration (HRSA), in accordance with the Federally Supported Health Centers Assistance Act (FSHCAA), as amended, sections 224(g)-(n) of the Public Health Service (PHS) Act, 42 U.S.C. §§ 233(g)-(n), deems Heartland Community Health Clinic to be an employee of the PHS, for the purposes of section 224, effective 1/1/2017 through 12/31/2017.

Section 224(a) of the PHS Act provides liability protection under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2672, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under the FTCA, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment. This protection is exclusive of any other civil action or proceeding. Coverage extends to deemed entities and their (1) officers; (2) governing board members; (3) full- and part-time employees; and (4) contractors who are licensed or certified individual health care practitioners providing full-time services (i.e., on average at least 32½ hours per week for the entity for the period of the contract), or, if providing an average of less than 32½ hours per week of such service, are licensed or certified providers in the fields of family practice, general internal medicine, general pediatrics, or obstetrics/gynecology. Volunteers are neither employees nor contractors and therefore are not eligible for FTCA coverage under FSHCAA.

This Notice of Deeming Action (NDA) is also confirmation of medical malpractice coverage for both Heartland Community Health Clinic and its covered individuals as described above. This NDA, along with documentation confirming employment or contractor status with the deemed entity, may be used to show liability coverage for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions by PHS employees while acting within the scope of such employment.

In addition, FTCA coverage is comparable to an "occurrence" policy without a monetary cap. Therefore, any coverage limits that may be mandated by other organizations are met.

This action is based on the information provided in your FTCA deeming application, as required under 42 U.S.C. § 233(h), with regard to your entity's: (1) implementation of appropriate policies and procedures to reduce the risk of malpractice and litigation; (2) review and verification of professional credentials and privileges, references, claims history, fitness, professional review organization findings, and licensure status of health professionals; (3) cooperation with the Department of Justice (DOJ) in the defense of claims and actions to prevent claims in the future; and (4) cooperation with DOJ in providing information related to previous malpractice claims history.

Deemed health centers must continue to receive funding under Section 330 of the PHS Act, 42 U.S.C. § 254b, in order to maintain coverage as a deemed PHS employee. If the deemed entity loses its Section 330 funding, such coverage will end immediately upon termination of the grant. In addition to the relevant statutory and regulatory requirements, every deemed health center is expected to follow HRSA's FTCA-related policies and procedures, which may be found online at http://www.bphc.hrsa.gov.

For further information, please contact your HRSA Project Officer as listed on your Notice of Grant

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

K.R., a Minor, by and through )
SHREZE JOHNSON, as Parent and Next Friend; )
and SHREZE JOHNSON, Individually; )
                 )
        Plaintiffs, )
                 )     Case No. 1:19-cv-01047
      v. )
                 )
UNITED STATES OF AMERICA; )
OSF HEALTHCARE SYSTEM, an Illinois )
Corporation d/b/a SAINT FRANCIS MEDICAL )
CENTER; BRADLEY NITZSCHE, M.D.; )
MICHAEL LEONARDI, M.D.; DOUGLAS C. )
HARRINGTON, M.D., S.C., an Illinois )
Corporation; DOUGLAS C. HARRINGTON, M.D.;) 
ILLINOIS HOSPITAL MEDICINE ASSOCIATES,)
P.C., an Illinois Corporation; ANTHONY J. )
CARUSO, M.D.; OSF MULTI-SPECIALTY )
GROUP, an Illinois Corporation; SHELLY )
SHALLAT, M.D.; and SUSAN RAMIRO, M.D.; )
                 )
        Defendants. )

## PLAINTIFFS' 735 ILCS 5/2-622 AFFIDAVIT

I, Matthew L. Williams, being first duly sworn, state as follows:

1.     I am one of the attorneys for the Plaintiffs.

2.     I have consulted and reviewed the facts of this case with health professionals who I reasonably believe: (i) are knowledgeable in the relevant issues involved in this particular action; (ii) practice or have practiced within the last five (5) years, or teach or have taught within the last five (5) years in the same area of health care or medicine that is at issue in this particular action and; (iii) meet the expert witness standards set forth in paragraphs (a) through (d) of Section 8-2501. The reviewing health professionals have determined in a written report, after a review of the medical records and other relevant medical materials involved in this particular action, that there is a reasonable and meritorious cause for the filing of this action.  The affiant has concluded on

Plaintiff Exhibit

C

the basis of the reviewing health professionals' reviews and consultations that there is reasonable and meritorious cause for filing this action.

3.      The Plaintiffs have not previously voluntarily dismissed an action based upon the same or substantially the same facts, omissions or occurrences.

**FURTHER AFFIANT SAYETH NOT.**

/s/ *Matthew L. Williams*
Matthew L. Williams

SUBSCRIBED AND SWORN TO
before me on April 16th, 2020.

NOTARY PUBLIC

> STACEY CLARK
> Official Seal
> Notary Public - State of Illinois
> My Commission Expires Mar 18. 2021

Matthew L. Williams (ARDC #6256858)
Salvi, Schostok & Pritchard P.C.
161 N. Clark Street, Suite 4700
Chicago, IL 60601
312.372.1227
mwilliams@salvilaw.com

## CERTIFICATE FOR AN ACTION IN MEDICAL MALPRACTICE
## PURSUANT TO 735 ILCS 5/2-622

I am a physician licensed to practice medicine in all of its branches in the State of New York.  I am board certified in obstetrics and gynecology.  I have been in practice for over twenty-five years.  I am qualified and familiar with the appropriate standard of care for the issues in this case, and I am familiar with the methods, procedures and treatments relevant to the allegations at issue in this case.

I have reviewed in detail the records, facts, and other relevant materials pertaining to the medical care and treatment provided to Shreze Johnson and ▮▮▮▮▮▮▮ including but not limited to the medical records from OSF St. Francis Medical Center.   K.R.

For the reasons that follow below, it is my opinion, which I hold to a reasonable degree of medical certainty, that a meritorious basis for filing an action exists against Dr. Bradley Nitzsche, Dr. Michael Leonardi, Dr. Douglas C. Harrington, Dr. Anthony J. Caruso, and nurse midwife, Carolyn Calhoun.

### Dr. Bradley Nitzsche deviated from the standard of care as follows:

(a)     Failed to appropriately respond to non-reassuring fetal monitor strips;
(b)     Failed to identify the occiput posterior position of ▮▮▮▮▮▮K.R.   K.R.
(c)     Improperly used a vacuum-assisted method of delivery on ▮▮▮▮▮▮▮ while she was in the occiput posterior position;   K.R.'s
(d)     Failed to place the vacuum in the proper position on ▮▮▮▮▮▮ head;
(e)     Failed to properly assess the fetal position prior to placing the vacuum;
(f)      Failed to inform Shreze Johnson of the risks associated with the use of a vacuum in the delivery of a baby in the occiput posterior position; and
(g)     Failed to perform a Cesarean section.

### Dr. Michael Leonardi deviated from the standard of care as follows:

(a)     Failed to appropriately respond to non-reassuring fetal monitor strips;
(b)     Failed to identify the occiput posterior position of ▮▮▮▮▮▮K.R.   K.R.
(c)     Improperly used a vacuum-assisted method of delivery of ▮▮▮▮▮▮ while she was in the occiput posterior position;
(d)     Failed to recommend the proper placement of the vacuum on ▮▮▮▮▮▮ K.R.'s head;
(e)     Failed to intervene when the vacuum was placed in an improper position on K.R.'s ▮▮▮▮ head;
(f)      Failed to properly assess the fetal position prior to allowing the placement of the vacuum;
(g)     Failed to inform Shreze Johnson of the risks associated with the use of a vacuum in the delivery of a baby in the occiput posterior position; and
(h)     Failed to perform a Cesarean section.

**Dr. Douglas C. Harrington deviated from the standard of care as follows:**

(a)     Failed to appropriately respond to non-reassuring fetal monitor strips;

(b)     Failed to identify the occiput posterior position of ▮▮▮▮▮ K.R.

(c)     Improperly used a vacuum-assisted method of delivery on ▮▮▮▮▮ while she was in the occiput posterior position; K.R.

(d)     Failed to recommend the proper position for placement of the vacuum on ▮▮▮ K.R.'s ▮▮▮ head;

(e)     Failed to intervene when the vacuum was placed in an improper position on K.R.'s ▮▮▮▮▮ head;

(f)      Failed to properly assess the fetal position prior to allowing the placement of the vacuum;

(g)     Failed to inform Shreze Johnson of the risks associated with the use of a vacuum in the delivery of a baby in the occiput posterior position; and

(h)     Failed to perform a Cesarean section.

**Dr. Anthony J. Caruso deviated from the standard of care as follows:**

(a)     Failed to appropriately respond to non-reassuring fetal monitor strips;

(b)     Failed to identify the occiput posterior position of ▮▮▮▮▮ K.R.

(c)     Improperly used a vacuum-assisted method of delivery on ▮▮▮▮▮ while she was in the occiput posterior position; K.R.

(d)     Failed to recommend the proper position for placement of the vacuum on ▮▮▮ K.R.'s ▮▮▮ head;

(e)     Failed to intervene when the vacuum was placed in an improper position on K.R.'s ▮▮▮▮▮ head;

(f)      Failed to properly assess the fetal position prior to allowing the placement of the vacuum;

(g)     Failed to inform Shreze Johnson of the risks associated with the use of a vacuum in the delivery of a baby in the occiput posterior position; and

(h)     Failed to perform a Cesarean section.

**Nurse Carolyn Calhoun deviated from the standard of care as follows:**

(a) Failed to timely recommend a Cesarean section;

(b) Failed to appropriately respond to non-reassuring fetal monitor strips;

(c) Failed to advocate for Shreze Johnson and ▮▮▮▮▮ and K.R.

(d) Failed to institute the chain of command.

In sum, it is my opinion that the above-referenced deviations in the standard of care each individually caused, or contributed to cause, injuries to ▮▮▮▮▮ K.R. including but not limited to subgaleal hemorrhage, kidney damage, and liver damage. Furthermore, it is my opinion that the above-referenced deviations in the standard of care each individually cause, or contributed to cause injuries to Shreze Johnson, including but not limited to, hemorrhage.

**CERTIFICATE FOR AN ACTION IN MEDICAL MALPRACTICE**
**PURSUANT TO 735 ILCS 5/2-622**

I am a physician licensed to practice medicine in the States of California and Idaho in all of its branches. I am board certified in pediatrics and neonatal-perinatal medicine. I have been in active practice for over thirty (30) years. I am qualified and familiar with the appropriate standard of care for a reasonably careful pediatrician and neonatal-perinatal physician. I am familiar with the methods, procedures, and treatments relevant to the allegations at issue in this case.

I have reviewed in detail medical records, facts, and other relevant materials pertaining to K.R., including but not limited to the medical records from OSF St. Francis Medical Center.

For the reasons that follow below, it is my opinion, which I hold to a reasonable degree of medical certainty, that a meritorious basis for filing an action exists against Lauren Holmgren, M.D.; Vivian Szymczuk, M.D.; Kyle Hickman, M.D.; Benedicto Fernandes, D.O.; Shelly Shallat, M.D.; and Susan Ramiro, M.D.

**Lauren Holmgren, M.D. deviated from the standard of care in the following respects:**

    a. Failed to recognize subgaleal hemorrhage is strongly associated with vacuum extraction;

    b. Failed to recognize that KR was at increased risk for subgaleal hemorrhage given her birth history, including a non-reassuring fetal monitor strip and vacuum-assisted extraction;

    c. Failed to recognize the signs and symptoms of subgaleal hemorrhage;

    d. Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

    e. Failed to order serial hemoglobin and hematocrit tests in light of birth history;

    f. Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

    g. Failed to adequately monitor KR's head circumference;

    h. Failed to recognize increase in head circumference as sign of subgaleal hemorrhage; and/or

    i. Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding.

**Vivian Szymczuk, M.D. deviated from the standard of care in the following respects:**

    a. Failed to recognize subgaleal hemorrhage is strongly associated with vacuum extraction;

1

b. Failed to recognize that KR was at increased risk for subgaleal hemorrhage given her birth history, including a non-reassuring fetal monitor strip and vacuum-assisted extraction;

c. Failed to recognize the signs and symptoms of subgaleal hemorrhage;

d. Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

e. Failed to order serial hemoglobin and hematocrit tests in light of birth history;

f. Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

g. Failed to adequately monitor KR's head circumference;

h. Failed to recognize increase in head circumference as sign of subgaleal hemorrhage; and/or

i. Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding.

**Kyle Hickman, M.D. deviated from the standard of care in the following respects:**

a. Failed to recognize subgaleal hemorrhage is strongly associated with vacuum extraction;

b. Failed to recognize that KR was at increased risk for subgaleal hemorrhage given her birth history, including a non-reassuring fetal monitor strip and vacuum-assisted extraction;

c. Failed to recognize the signs and symptoms of subgaleal hemorrhage;

d. Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

e. Failed to order serial hemoglobin and hematocrit tests in light of birth history;

f. Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

g. Failed to adequately monitor KR's head circumference;

h. Failed to recognize increase in head circumference as sign of subgaleal hemorrhage; and/or

2

    i.   Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding.

**Benedicto Fernandes, D.O. deviated from the standard of care in the following respects:**

    a.   Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

    b.   Failed to order serial hemoglobin and hematocrit tests in light of birth history;

    c.   Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

    d.   Failed to adequately monitor KR's head circumference;

    e.   Failed to recognize increase in head circumference as sign of subgaleal hemorrhage; and/or

    f.   Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding.

**Shelly Shallat, M.D. deviated from the standard of care in the following respects:**

    a.   Failed to recognize subgaleal hemorrhage is strongly associated with vacuum extraction;

    b.   Failed to recognize that KR was at increased risk for subgaleal hemorrhage given her birth history, including a non-reassuring fetal monitor strip and vacuum-assisted extraction;

    c.   Failed to recognize the signs and symptoms of subgaleal hemorrhage;

    d.   Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

    e.   Failed to order serial hemoglobin and hematocrit tests in light of birth history;

    f.   Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

    g.   Failed to adequately monitor KR's head circumference;

    h.   Failed to recognize increase in head circumference as sign of subgaleal hemorrhage;

    i.   Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding; and/or

    j.   Failed to adequately communicate medical history and clinical status to neonatologist accepting care of KR.

**Susan Ramiro, M.D. deviated from the standard of care in the following respects:**

    a.   Failed to timely treat subgaleal hemorrhage by promptly administering blood products to address blood loss and acidosis;

    b.   Failed to order serial hemoglobin and hematocrit tests in light of birth history;

    c.   Failed to recognize falling hemoglobin and hematocrit as a sign of subgaleal hemorrhage;

    d.   Failed to adequately monitor KR's head circumference;

    e.   Failed to recognize increase in head circumference as sign of subgaleal hemorrhage; and/or

    f.   Failed to timely order lab work to assess presence of metabolic acidosis, a sign of the effects of internal bleeding.

In sum, it is my opinion that the above-referenced deviations in the standard of care, individually and in combination with each other, caused, or contributed to cause, a delay in the diagnosis and treatment of K.R.'s condition, which caused K.R. to suffer personal injuries.

4

Filed
Robert M. Spears
November 4, 2021
Clerk of the Circuit Court
Peoria County, Illinois

IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT OF ILLINOIS
PEORIA COUNTY

In re the Guardianship of        )
                                   )
███████████████████,     )     Case No.  20-P-00257
K.R.                          )
           A Minor.        )

## ORDER APPOINTING GUARDIAN OF MINOR'S ESTATE

This matter coming before the Court for hearing on the Petition for Guardianship of

Minor's Estate, the Petitioner appearing with counsel, the minor appearing by her Guardian ad

Litem, and the Court having heard the evidence and arguments on behalf of all concerned and

being fully advised in the premises.

The Court finds that it has jurisdiction of the subject matter hereof and of the parties hereto.

And now the Court, after due consideration of all the evidence and arguments, FINDS:

1.     The minor (hereafter "███████" [K.R.]) is a resident of Peoria County, Illinois.

2.     In accordance with Section 11-8 of the Probate Act, 755 ILCS 5/11-8:

(a)     ███████ [K.R.] is four years old, having been born on ███████████ [K.R.]. ███████████ resides with her mother, the Petitioner, at ███████████████████████████

(b)     ███████ [K.R.] s other nearest relative is her father, Deshaun Antonio Riley, who resides at ███████████████████████. Deshaun has entered his appearance, waived service of Summons, and validly executed his consent to all guardianship proceedings.

(c)     ███████ [K.R.] has severe, permanent, and irreversible injuries due to alleged medical negligence at and around the time of her birth. The medical negligence litigation is the subject of Peoria County case number 17 L 306 and United States District Court, Central District of Illinois, Peoria Division, case number 1:19-cv-01047. This is the only other court action concerning ███████ [K.R.].

(d)     As a result of the medical negligence litigation, it is anticipated that ███████ [K.R.] will have sufficient personal estate to warrant a guardianship of her estate.

(e)     As a result of the medical negligence litigation, it is anticipated that ███████ [K.R.] will also in the future have annual income or other receipts.

Plaintiff Exhibit

**D**

K.R.

(f)     The proposed guardian of       s estate, Commerce Trust Company, 401 Main St., Suite 100, Peoria, IL 61602, has indicated its willingness to serve as the guardian of the estate.

3.     It is necessary or convenient that Commerce Trust Company be appointed as the guardian of         estate due to the significant and complex financial matters that are related to the above medical negligence litigation and its resolution.

K.R.

WHEREFORE, IT IS HEREBY ORDERED:

K.R.

A.     Commerce Trust Company is appointed plenary guardian of        s estate. Letters of Guardianship shall issue without further notice upon the filing of Commerce's Acceptance of Office herein. The guardian shall have all of the powers and duties regarding the minor's estate as enumerated in Section 11-13 of the Probate Act, 755 ILCS 5/11-13.

B.     Costs are assessed as follows, to be paid from guardianship funds: $500.00 to Ann R. Pieper for her fees and expenses in serving as Guardian ad Litem.

THERE IS NO JUST REASON FOR DELAYING ENFORCEMENT OR APPEAL OF THIS ORDER.

ENTER: 11/4/2021

_____
Judge of the Tenth Judicial Circuit

APPROVED:

_____
Ann R. Pieper, Guardian ad Litem